IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DENISE SMITH                                                                                          PLAINTIFF
*On behalf of*
A MINOR CHILD, B.M.M..

vs.                                          Civil No. 6:08-cv-06027

MICHAEL J. ASTRUE                                                                              DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Denise Smith ("Plaintiff") brings this action on behalf of a minor child, B.M.M., and pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying B.M.M.'s application for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

On July 12, 1994, Plaintiff filed an application for childhood disability benefits on behalf of B.M.M. (Tr. 13, 81). The Agency granted disability benefits beginning July 1, 1994. (Tr. 13). The Agency subsequently found the disability had ceased as of January 1, 2000. (Tr. 13, 81). This

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

application and disability cessation decision are not at issue before this Court.

On March 19, 2004, Plaintiff protectively filed a new application for SSI on behalf of B.M.M. (Tr. 12, 81). Plaintiff alleged B.M.M. was disabled due to attention deficit disorder, behavioral problems, and heart problems. (Tr. 85). Plaintiff alleged B.M.M.'s onset date was January 1, 2004. (Tr. 81). The relevant time period for benefits begins with the filing of the application of March 19, 2004. *See* 20 C.F.R. § 416.335.

This application was denied initially and again on reconsideration. (Tr. 25-27). On October 6, 2005, Plaintiff requested an administrative hearing on this application. (Tr. 37). Specifically, with this request, Plaintiff stated the following: "B. [name redacted] is permanently and totally disabled and has no transferrable skills." (Tr. 37). The administrative hearing was held in Hot Springs, Arkansas on November 20, 2006. (Tr. 267-286). Plaintiff and B.M.M. were present and were represented by counsel, Shannon Carroll, at this hearing. *See id.* Plaintiff and witness Ashley Quinn testified at this hearing. *See id.* At the time of this hearing, B.M.M. was twelve (12) years old and was in the seventh grade in school. (Tr. 270).

On June 16, 2007, the ALJ entered an unfavorable decision denying Plaintiff's request for disability benefits for B.M.M. (Tr. 12-24). In this opinion, the ALJ determined B.M.M. was born on March 8, 1994. (Tr. 13). The ALJ determined B.M.M. had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to the ALJ's decision. (Tr. 13). The ALJ determined B.M.M. had the following severe impairments: attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). (Tr. 13). However, the ALJ also determined that B.M.M. did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 13-14).

In this opinion, the ALJ evaluated B.M.M.'s six domains of functioning and determined B.M.M. did not have an impairment or combination of impairments functionally equivalent to the Listings. (Tr. 14-23). Specifically, the ALJ determined B.M.M. did not have an extreme or marked limitation in any of his six domains of functioning. *See id.* The ALJ determined B.M.M. had no limitation in the following domains: (1) acquiring and using information, (2) moving about and manipulating objects, (3) caring for yourself, and (4) health and physical well-being. (Tr. 15-16, 19-23). The ALJ also determined B.M.M. had a less than marked limitation in the following domains: (1) attending and completing tasks, and (2) interacting and relating with others. (Tr. 16-19). In making these determinations, the ALJ evaluated the testimony regarding B.M.M.'s alleged disability. (Tr. 13-14). The ALJ determined these subjective complaints of disability were not credible to the extent alleged. (Tr. 23, Finding 6). Based upon these findings, the ALJ determined B.M.M. was not under a "disability," as defined by the Act, from March 19, 2004, the date the application was filed, through the date of the ALJ's decision or through June 16, 2007. (Tr. 23).

On July 13, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable disability determination. (Tr. 8). On February 13, 2008, the Appeals Council declined to review this determination. (Tr. 4-6). On March 24, 2008, Plaintiff filed the present appeal. (Doc. No. 1). Both parties have filed appeal briefs. (Doc. Nos. 7, 8). The parties consented to the jurisdiction of this Court on April 3, 2008. (Doc. No. 4). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g)

(2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is seeking disability benefits on behalf of a minor child. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c(a)(3)(C)), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409. Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age eighteen (18) under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiff filed her application in 2004, the new law applies.

Under the new law, the ALJ's disability determination is based upon a three-step analysis. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the minor child has engaged in substantial gainful activity. If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment. If a severe impairment is found, the ALJ will proceed to the third step. At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments ("Listings"), *See* 20 C.F.R. pt. 404, subpt. P, app. 1. A minor child may be disabled if his or her impairment is functionally equivalent to a disability listing, even if the minor child's impairment does not meet the standard requirements for a disability listing. *See* 20 C.F.R. § 416.924(d)(1).

A single method is provided for evaluating whether an impairment is "functionally equivalent" to a disability listing, based upon six domains of functioning. The six domains are the following: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If the minor child claiming benefits has "marked" limitations in two of these domains or an "extreme" limitation in one of these domains, then the child's impairment is functionally equivalent to a disability listing. *See id.* § 416.926a(a); *Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005).

A "marked" limitation is a limitation that is "more than moderate" and "less than extreme."

*See id.* § 416.926a(e); *Lehnartz v. Barnhart,* No. 04-3818, 2005 WL 1767944, at *3 (8th Cir. July 27, 2005). A marked limitation is one that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See id.* "Extreme" limitation is the rating the Commissioner gives to the most serious limitations. *See id.*

### 3. Discussion:

Plaintiff brings the present appeal claiming the following: (a) substantial evidence does not support the ALJ's determination that B.M.M.'s impairments are not functionally equivalent to the Listings and (b) substantial evidence does not support the ALJ's disability determination. (Doc. No. 7, Pages 2-19). In response, Defendant argues the ALJ's disability determination is supported by substantial evidence in the record and the ALJ properly determined B.M.M's impairments were not functionally equivalent to a Listing. (Doc. No. 8, Pages 6-20). The Plaintiff makes essentially the same points with both arguments, therefore the Court need only address the first argument.[2]

Plaintiff claims the ALJ erred by finding B.M.M.'s impairments were not functionally equivalent to the Listings. (Doc. No. 7, Pages 2-19). Specifically, Plaintiff claims B.M.M has the following limitations: (a) marked limitation in acquiring and using information, (b) marked or extreme limitation in attending and completing tasks, (c) marked or extreme limitation in interacting and relating with others, (d) marked or extreme limitation in moving about and manipulating

---

[2] Plaintiff also appears to claim the ALJ improperly found B.M.M. did not meet the requirements of the Listings. (Doc. No. 7, Page 18). However, Plaintiff provided no substantive briefing on this issue. *See id.* Instead, Plaintiff merely listed B.M.M's disabilities and then stated that those disabilities met the requirements of the Listings. *See id.* Because Plaintiff has provided no briefing on this issue, this Court will not address this claim. *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (holding "We reject out of hand Vanden-boom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings.").

6

objects,[3] (e) marked limitation in caring for yourself, and (f) marked or extreme limitation in health and physical well-being.[4]  This Court will address each of these six domains of functioning.

### A. Acquiring and Using Information

The ALJ determined B.M.M. had no limitation in the domain of acquiring and using information.  (Tr. 15-16).  Plaintiff claims B.M.M. has a marked limitation in acquiring and using information.  (Doc. No. 7, Pages 6-8).  In support of the argument that B.M.M. has this marked limitation, Plaintiff notes B.M.M. was diagnosed with expressive and receptive language delays and phonological disorder in May of 1998.  *See id.*

However, the ALJ pointed out that even though Plaintiff had been diagnosed with expressive and receptive language delays and an articulation disorder in May 1998, the delays were described as only moderate and the articulation disorder was only mild.  (Tr. 16, 197-198).  Further, B.M.M. had a psychiatric evaluation on October 26, 2004 by Dr. Paula Lynch.  (Tr. 162-165).  Dr. Lynch indicated Plaintiff had a history of phonological disorder and a mixed receptive expressive language disorder that had resolved with successful speech therapy, and there were no sensory or communicative deficits and B.M.M.'s speech was clear.  (Tr. 162-163).  Further, in a school questionnaire, answered on March 10, 2005 by B.M.M.'s fifth grade teacher, it was reported B.M.M. had no significant problems in communication.  (Tr. 55).

Additionally, the ALJ considered the findings of Dr. Thomas Smith and  Dr. Susan Manley,

---

[3] Plaintiff does not specifically state whether she claims B.M.M. has a *marked* or an *extreme* limitation in this domain of functioning.  (Doc. No. 7, Pages 12-13).  Therefore, this Court assumes Plaintiff is arguing that B.M.M. has either a marked or an extreme limitation in this domain of functioning.  *See id.*

[4] Plaintiff does not specifically state whether she claims B.M.M. has a *marked* or an *extreme* limitation in this domain of functioning.  (Doc. No. 7, Pages 15-18).  Therefore, this Court assumes Plaintiff is arguing that B.M.M. has either a marked or an extreme limitation in this domain of functioning.  *See id.*

who completed Childhood Disability Evaluation Forms after having reviewed the medical evidence and school reports of B.M.M. (Tr. 16, 208-222). Both reports found no evidence of a limitation in this domain. (Tr. 210, 219).

The ALJ found the medical records showed B.M.M. had not been diagnosed with any learning disability that would interfere with her ability to acquire and use information. (Tr. 16). This Court finds Plaintiff did not meet her burden of establishing B.M.M. suffers from a marked or extreme limitation in this domain of functioning.

### B.  Attending and Completing Tasks

The ALJ determined B.M.M. had a less than marked limitation in the domain of attending and completing tasks. (Tr. 16). Plaintiff claims B.M.M. has a marked or extreme limitation in this domain of functioning. (Doc. No. 7, Pages 7-10). In support of this claim, Plaintiff refers to several records which came from the time period of August-October, 2004. (Doc. No. 7, Pg. 8-9). However, as found by the ALJ, the records from the Community Counseling Services, Inc. showed once B.M.M. began taking the proper type of medication in early 2005, B.M.M. experienced significant symptom improvement in her ADHD. (Tr. 17, 153, 155, 162, 229, 232, 235, 239, 245, 248, 251). The medication and counseling improved the hyperactivity symptoms of B.M.M. and thus contradict Plaintiff's claim of marked or extreme limitation in this domain of functioning.

The Community Counseling Services progress records show once B.M.M. began receiving counseling and the proper type and dosage of Adderall, by early 2005, B.M.M.'s symptoms had improved. (Tr. 153-183, 229-252). B.M.M. continued to take Adderall during the remainder of 2005. (Tr. 251). On February 1, 2006, B.M.M. was examined by Dr. Paula Lynch. (Tr. 248). Dr. Lynch indicated B.M.M was making continued improvement and her physical health, mood, appetite, and sleep were stable. (Tr. 248).

8

The ALJ also considered the Teacher Questionnaire completed on February 22, 2007 by B.M.M.'s seventh grade teacher and counselor. (Tr. 118-125). The results show B.M.M.'s teacher and counselor did not note any serious or very serious problems in the domain of attending and completing tasks. (Tr. 120). They indicated B.M.M. had no problems paying attention when spoken to directly, refocusing to task when necessary, and carrying out single-step instructions. (Tr. 120).

This Court finds Plaintiff did not meet her burden of establishing B.M.W. suffers from a marked or extreme limitation in this domain of functioning.

### C. Interacting and Relating with Others

The ALJ determined B.M.M. had a less than marked limitation in the domain of interacting and relating with others. (Tr. 18-19). Plaintiff claims B.M.M. has a marked or extreme limitation in this domain of functioning. (Doc. No. 7, Pages 10-12). In support of this claim, Plaintiff references records prior to B.M.M. being on an established treatment plan with Community Counseling Service. (Doc. No. 7, Pgs. 11-12). As pointed out above, the records from Community Counseling Services, Inc. showed once B.M.M. began taking the proper type of medication in early 2005, B.M.M. experienced significant symptom improvement in her ADHD. (Tr. 17, 153, 155, 162, 229, 232, 235, 239, 245, 248, 251).

The ALJ, in making his findings in this domain, also relied on the Teacher Questionnaire completed on February 22, 2007 by B.M.M.'s seventh grade teacher and counselor. (Tr. 118-125). B.M.M.'s teacher and counselor indicated B.M.M. had no problems playing cooperatively with children, making and keeping friends, expressing anger appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, interpreting meaning of facial expression, body language, hints and sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in general everyday conversation. (Tr. 121).

However, even if the records relied on by Plaintiff were the only evidence relating to this domain, they do not establish B.M.M. suffers from anything greater than a *marked* limitation in interacting and relating with others. *See* 20 C.F.R. § 416.926a(e) (requiring that an "extreme" limitation interfere "very seriously" with the claimant's ability to independently initiate, sustain, or complete activities). The fact that B.M.M. is able to attend school with other children and is able to maintain passing grades in all classes but one, (Tr. 129), leads this Court to find that B.M.M. does not have an "extreme" limitation in this domain of functioning.

Furthermore, even if this Court found such a *marked* limitation, Plaintiff still has not established B.M.M. is disabled due to her impairments. *See* 20 C.F.R. § 416.926a(a) (requiring a claimant to establish a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning). Therefore, Plaintiff has not met her burden of establishing B.M.M.'s impairments are functionally equivalent to the Listings and that B.M.M. is disabled.

**D.  Moving About and Manipulating Objects**

The ALJ determined B.M.M. had no limitation in the domain of moving about and manipulating objects. (Tr. 19-20). Plaintiff claims B.M.M. has a marked or extreme limitation in this domain of functioning. In support of this claim, Plaintiff argues B.M.M. is limited based on her previous heart surgery and one leg being shorter which interferes with PE and other physical activities. (Doc. No. 7, Pages 12-13).

B.M.M did have cardiac surgery to repair a heart defect as a baby, however the treatment records indicate the surgery was successful and B.M.M. has had no significant residual symptoms. (Tr. 20). On March 11, 2003 and September 14, 2004, B.M.M underwent echocardiograms tests which did not reveal any significant issues with her heart. (Tr. 146,151). On February 7, 2005, Plaintiff informed Dr. Bruce White that B.M.M. was having no cardiac problems. (Tr. 223). On

10

April 17, 2006 B.M.M. was examined by Dr. Kathryn Bowman. (Tr. 242-244). According to this report, Dr. Bowman reported no restrictions for physical activity from a cardiac standpoint. (Tr. 242). Finally, there is no medical evidence setting forth any treatment or limitations for a leg length discrepancy.

This Court finds Plaintiff did not meet her burden of establishing B.M.W. suffers from a marked or extreme limitation in this domain of functioning.

### E. Caring for Yourself

The ALJ determined B.M.M. had no limitation in the domain of caring for yourself. (Tr. 20-21). Plaintiff claims B.M.M. has a marked limitation in this domain of functioning. (Doc. No. 7, Pages 14-15). Specifically, Plaintiff claims B.M.M. cannot care for herself because she refuses to take her medicine, refuses to eat and fails to avoid conduct that hurts her. *See id.*

In assessing a child's alleged disability, this domain of "caring for onself" requires consideration of how well that child can maintain his emotional and physical health, including an ability to fulfill wants and needs, as well as cope with stress and change. *See* 20 C.F.R. § 416.926a(k). As pointed out by the ALJ, the Teacher Questionnaire, completed on February 22, 2007 by B.M.M.'s seventh grade teacher and counselor, indicated they observed no problems in the domain of caring for herself. (Tr. 123). Also, the findings of Dr. Thomas Smith and Dr. Susan Manley, who completed Childhood Disability Evaluation Forms after having reviewed the medical evidence and school reports of B.M.M., found no evidence of a limitation in this domain. (Tr. 211, 220).

These findings are consistent with the ALJ's determination that B.M.M. does not have a marked limitation in this domain of functioning and provide substantial evidence for the ALJ's determination on this issue.

### F. Health and Physical Well-Being

The ALJ determined B.M.M. had no limitation in the domain of health and physical well-being. (Tr. 21-23). Plaintiff claims B.M.M. has a marked or extreme limitation in this domain of functioning. (Doc. No. 7, Pages 15-18).

As previously discussed above, B.M.M.'s mental health treatment records, beginning in February 2005 and continuing through November 2006, indicate B.M.M.'s ADHD and ODD symptoms improved with proper treatment. (Tr. 155, 153, 162, 229, 232, 235, 239, 245, 248, 251). The ALJ also pointed out that treatment records of B.M.M. showed no record of generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain. (Tr. 22). There was also no indication of any significant medication side effects. (Tr. 22). Finally, the findings of Dr. Thomas Smith and Dr. Susan Manley, who completed Childhood Disability Evaluation Forms, indicate no evidence of a limitation in this domain. (Tr. 211, 220).

This Court finds the ALJ's determination on this domain of function is supported by substantial evidence and should be affirmed.

### 4. Conclusion:

Based upon the foregoing, this Court finds that the ALJ's determination, that B.M.M.'s impairments do not meet and are not medically or functionally equivalent to a Listing, is supported by substantial evidence in the record and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **12th day of August, 2009.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE